# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

AMERICAN HEALTH              )
DIAGNOSTICS, L.L.C.,         )
                            )
     Plaintiff,         )
                            )
vs.                          )   Case No. CIV-04-1303-F
                            )
SONIC PACKAGING INDUSTRIES,  )
et al.,                      )
                            )
     Defendants.        )

## ORDER

Defendant Packaging Systems, L.L.C. (Packaging Systems) and defendant Le Papillon of New Jersey, Ltd. (Le Papillon) have moved separately for dismissal under Fed. R. Civ P. 12(b)(2) for lack of personal jurisdiction. In the alternative, Le Papillon has moved for a change of venue.

Specifically, the pending motions are as follows: Packaging Systems' motion to dismiss (doc. no. 41) seeks dismissal of all claims against it; those claims are plaintiff American Health Diagnostics, L.L.C.'s (American Health's) claims alleged against Packaging Systems in the Amended Complaint and non-moving defendant Sonic Packaging Industries, Inc.'s (Sonic's) cross-claims alleged against Packaging Systems in Sonic's Answer to Amended Complaint. (Motion to dismiss cross-claims at doc. no. 79.) Defendant Le Papillon's motion to dismiss seeks dismissal of all claims alleged against it (doc. no. 40); those claims are American Health's claims alleged against Le Papillon in the Amended Complaint and Sonic's cross-claims alleged against Le Papillon in Sonic's Answer to the Amended Complaint. (Motion to dismiss cross-claims at doc. no. 78.) As an alternative to dismissal, Le Papillon

moves for a change of venue under 28 U.S.C. § 1404, asking this court to transfer this action to New Jersey. All motions have been fully briefed and are ready for determination.

## I. Standards

The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Rambo v. American Southern Insurance Company, 839 F.2d 1415, 1417 (10th Cir. 1988). Prior to trial, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials as it is here,[1] the plaintiff need only make a prima facie showing of jurisdiction. Id. The allegations in the Amended Complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. Id. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party. Id. In order to defeat a plaintiff's prima facie showing of jurisdiction a defendant must present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable. Id.

## II. Fact-findings

This action arises from American Health's purchase thousands of tubes, with lids, in which a female intimacy cream was packaged. American Health alleges that the tubes leaked. Each of the defendants had some role with respect to manufacturing, packaging, or shipping the product. Applying the appropriate evidentiary standards, the court finds that the following facts are established for purposes of the motions to dismiss. Additional fact-findings, although not set out separately by number, are stated in parts IV and V of this Order.

---

[1]There has been no request for an evidentiary hearing.

1.  Plaintiff American Health is an Oklahoma limited liability company formed under the laws of Oklahoma and with its principal place of business in Oklahoma. (Amended Complaint, ¶ 1.)[2]  American Health is an Oklahoma-based medical distribution, marketing and product brokerage firm with its corporate headquarters in Oklahoma City, Oklahoma.  (Packaging Systems' undisputed fact "UF" 1.)[3]

2.  The defendants in this action are as follows:  Sonic, a New Jersey corporation with its principal place of business in New Jersey (Packaging Systems UF 4); Packaging Systems, a New Jersey limited liability company with its principal place of business in New Jersey (Packaging Systems UF 7); Le Papillon, a Delaware corporation with its principal place of business in New Jersey (Le Papillon UF 1); Eptech Corporation ("Eptech),[4] alleged to be  Pennsylvania corporation with its principal place of business in New Jersey (Amended Complaint ¶ 5); and Sussex Technology, Inc. ("Sussex), alleged to be a New Jersey corporation with its principal place of business in New Jersey (Amended Complaint ¶ 6).

3.  American Health is the distributor of a female intimacy cream marketed under the brand name "Femoré."  (Packaging Systems UF 2.)  American Health contracted with Sonic, a non-moving defendant, to package Femoré for American Health.  (Packaging Systems UF 3.)  There is no evidence, and no party has argued,

---

[2]The court has not found these specific facts stated anywhere in the record evidence; however, these facts do not appear to be in dispute. These allegations have been admitted by Sonic, the only defendant to answer so far.

[3]Where a fact is expressly undisputed in the responding party's brief, that fact is identified as "UF," an undisputed fact.  Other facts which the court finds, and which have been proposed as facts by the parties but which are not been expressly undisputed, are identified as "Fact No." Whether or not this Order cites affidavits or other supporting evidence which the parties have produced in support of their proposed facts, all fact-findings stated in this Order, whether or not they are expressly undisputed, are supported with record evidence.

[4]Some of the briefs and documents before the court refer to Eptech as "Eptec."  This Order uses "Eptech" because there is a listing for a company of that name in the Mt. Laurel, New Jersey worldwide web yellow pages.

that either of the moving defendants, Packaging Systems or Le Papillon, dealt with American Health or with any other person or party or entity in Oklahoma, at any time relevant to this action.   Among Sonic, Packaging Systems, and Le Papillon, only Sonic dealt with American Health.  (See Packaging Systems UF 6 regarding plaintiff American Health's contract with Sonic.)  Sonic then dealt with Packaging Systems, contracting to buy tubes for the Femoré product from Packaging Systems and to have Packaging Systems fill the tubes with the Femoré cream.  (Packaging Systems UF 6.)  Packaging Systems then subcontracted with Le Papillon, the designer and manufacturer of the tubes and correlating caps, for manufacture of the tubes which had been ordered by Sonic.  (Packaging Systems UF 7.)  In summary, American Health dealt with Sonic, Sonic dealt with Packaging Systems and Packaging Systems dealt with Le Papillon.

4. Packaging Systems sent several orders to Le Papillon for the tubes and lids. (Le Papillon Fact No. 18.)  Le Papillon's subcontractor, Eptech, manufactured the tubes and lids using Le Papillon's equipment, in accordance with design specifications created and approved by Le Papillon.  (Le Papillon UF 19; Packaging Systems UF 9.) The caps for the lids were manufactured for Le Papillon by Sussex with equipment owned by Le Papillon.  (Packaging Systems UF 10.)  Eptech and Sussex shipped their products to Norden Andbro, Inc. in New Jersey.  (Le Papillon UF 19; Packaging Systems UF 11.)  Norden Andbro screwed the caps and tubes together, printed labels and other information on the tubes, and shipped the tubes and caps to Packaging Systems in New Jersey.  (Packaging Systems UF 12.)

5.  Packaging Systems filled the printed tubes with the cream and sealed the tubes closed.  (Packaging Systems UF 13.) Packaging Systems then shipped the filled tubes, capped with lids, to American Health in Oklahoma City per the shipping destination indicated on purchase orders which had been faxed to Packaging Systems

from Sonic.[5]  (The affidavit of Howard Thau, attached as Ex. 1 to Sonic's response to Packaging System's motion, states in ¶ 5 that the August 7, 2002 purchase order was faxed to Packaging Systems and states in ¶ 6 that after the purchase order was signed it was "returned to Sonic," indicating that the purchase order was faxed from and back to Sonic; see Sonic Fact Nos. 3,4 found in Sonic's response to Packaging System's motion; American Health Fact No. 5, found in American Health's response to Packaging Systems' motion, and supporting documents, along with packing documents found at Ex. 1-C to Sonic's response to Packaging System's motion, indicating product was actually shipped; purchase order dated August 7, 2002 is found at Ex. 1-A and Ex. 1-B to Sonic's response to Packaging Systems' motion; purchase order dated September 24, 2001 is found at Ex. 3 to Sonic's response and Ex. 3 to Sonic's supplemental response to Packaging Systems' motion.) The purchase orders show Packaging Systems as the vendor and show that the Femoré tubes were for shipment to American Health Diagnostics at 405 N. Meridian, Oklahoma City, Oklahoma 73107.  (Purchase order dated August 7, 2002 found at Ex.1-A and Ex. 1-B to Sonic's response to Packaging Systems' motion; purchase order dated September 24, 2001 found at Ex. 3 to Sonic's response and supplemental response to Packaging Systems' motion.)

---

[5]Goran Adolfsson is president of Packaging Systems.  Mr. Adolfsson's affidavit (Ex. 3 to Packaging Systems' motion) states that Sonic made arrangements for the product to be picked up by a shipping company. Howard Thau is president of Sonic. Mr. Thau's affidavit (Ex. 1 to Sonic's response to Packaging Systems' motion) states that Packaging Systems made 17 shipments to Oklahoma City. Sonic's brief states that Packaging Systems "permitted entry on its property by the trucking company so that the freight could be picked up, loaded, and subsequently delivered to Oklahoma City." (Sonic's response to Packaging Systems' motion, p. 6) These statements are not inconsistent.  It is common to speak of a party "shipping" or "making shipment" even when a shipping or trucking company is used. The court's fact-finding that Packaging Systems "shipped" the product is intended to include shipping by releasing the product to a shipping or trucking company with the knowledge that the product was bound for delivery in Oklahoma City.

6.   The signature of Packaging Systems' president, Mr. Goran Adolfsson, appears on a purchase order dated August 7, 2002. (For all facts in this paragraph see Ex. 1, Ex. 1-A and Ex. 1-B to Sonic's response to Packaging Systems' motion; and see Sonic's Fact Nos. 3 and 4, found in Sonic's response to Packaging Systems' motion.) That purchase order covers a batch of 1,800,000 Femoré tubes which American Health believes included the tubes and lids that leaked and allegedly caused the damages that are the subject of this lawsuit. Mr. Adolfsson's signature appears under printed language which was likely stamped on the purchase order. (Sonic's Ex. 1-B, response to Packaging Systems' motion.) That language states: "Vendor acknowledgment of PO is required within 24 hours of receipt. Please confirm quantity, price, and delivery date. Sign and fax back at above fax number." A signature line carrying Mr. Adolfsson's signature follows this statement. The top of this purchase order also shows faxing information indicating that on August 8, 2002, within the "required...24 hours of [the purchase order's] receipt" by Packaging Systems, the purchase order carrying Mr. Adolfsson's signature for Packaging Systems was faxed from Packaging Systems back to Sonic. Packaging Systems' records (Ex. 1-C to Sonic's brief in response to Packaging Systems' motion), show that between August 23, 2002 and November 20, 2002 inclusive, Packaging Systems made 17 separate shipments of completed tubes of Femoré to Oklahoma City. (Sonic Fact No. 6 found in Sonic's response to Packaging System's motion; and see Ex. 1-C, and Ex. 1, affidavit of Mr. Thau, all attached to Sonic's response brief.)[6]

7.   Additionally, a purchase order dated September 24, 2001 indicates that Packaging Systems had previously engaged in a very similar transaction with respect to a quantity of 125,000 tubes of the Femoré product. (Ex. 3 to Sonic's response and

---

[6]Mr. Thau's affidavit and Sonic's fact no. 6 state that the last date of these documents is November 15, 2002; however, it appears to the court that the last date of these documents is November 20, 2002. The accuracy of this date is not critical.

Ex. 3 to Sonic's supplemental response, to Packaging Systems' motion.)   This transaction is documented by a purchase order dated September 24, 2001, which states that the vendor is Packaging Systems and that the product is for shipment to American Health Diagnostics, LLC at 405 N. Meridian in Oklahoma City, OK 73107.   (Ex. 3, Sonic's response and Sonic's supplemental response, to Packaging Systems' motion.) Other documents indicate that Packaging Systems made several shipments of the Femoré product after September 24, 2001, presumably per the purchase order of that date, all to Oklahoma City.  (Ex. 4 through Ex. 7, Sonic's supplemental response to Packaging Systems' motion.)   The September 24, 2001 transaction occurred approximately 11 months before the August 7, 2002 transaction.

8.   When all of the Femoré tubes which were shipped to Oklahoma by Packaging Systems were shipped, they were printed with information which read: "American Health Diagnostics, L.L.C. OKC, OK  73107." (American Health's Fact No. 4, American Health's response to Packaging Systems' motion; and Ex. 2 to American Health's brief, photograph of tubes.)

9.   All together, Sonic contracted with Packaging Systems for production and packaging of over two million tubes and lids for the Femoré product, at a total cost to American Health and a total payment to Packaging Systems of approximately $280,000.00.  (American Health's Fact No. 1(a)- (c), American Health's response to Packaging System's motion.)

10.  Le Papillon's subcontractors manufactured tubes and lids based on orders Le Papillon received from Packaging Systems in 2001 and 2002, and shipped the tubes and lids to Norden Andbro, Inc.  (Le Papillon Fact No. 18 and UF 19.)[7]  When

_____

[7]There appear to be discrepancies in the evidence regarding the dates of these orders.  Ex. 4 to American Health's response brief filed in response to Le Papillon's motion is a Le Papillon answer to an interrogatory (int. no. 13) which states certain dates; Watson Warriner's affidavit,
(continued...)

the tubes were shipped to Norden Andbro, the tubes were blank white containers with no printed labeling. (Le Papillon UF 20.)   At no time were any decorated sample tubes provided to Le Papillon for review or approval by Le Papillon. (Le Papillon's UF 22.)  Le Papillon's subcontractors manufactured the blank tubes and lids in New Jersey for Le Papillon and shipped the products to Andbro Norden, Inc., to be capped and decorated. (Le Papillon's UF 19.)  Le Papillon believes that Andbro Norden then shipped the capped and decorated tubes and lids to Packaging Systems. (Le Papillon's UF 21.)

11.   There is no evidence that Le Papillon handled any information or any document that reflected American Health's identity or its location in Oklahoma. There is no evidence that at any relevant time Le Papillon saw the purchase orders that were exchanged between Sonic and Packaging Systems, or that Le Papillon or anyone on its behalf signed those purchase orders, or that Le Papillon acted in any way based on those purchase orders.  There is no evidence that Le Papillon knew its goods and services were directed at the Oklahoma market or to American Health in Oklahoma City. (See Le Papillon's fact no. 29.)

12.   Le Papillon charged Packaging Systems for Le Papillon's services.  (See American Health's Fact No. 8 supported by Ex. 5, American Health's  response to Le Papillon's moving brief.)   American Health contends that Le Papillon made approximately $170,000.00 from the production of the tubes, calculated at $83.20 per 1,000 tubes for 2 million tubes. (American Health's Fact No. 8,  American Health's response to Le Papillon's motion.)

---

[7](...continued)
president of Le Papillon, states (at ¶ 19) other dates for these orders.  That affidavit is filed as Exhibit 1 to Le Papillon's moving brief.  These inconsistencies do not change the court's finding that there were orders in 2001 and 2002.

13.   Packaging Systems and Le Papillon do not advertise in Oklahoma or elsewhere.  (Le Papillon UF 30, Le Papillon's moving brief; Packaging Systems UF 16, Packaging Systems' moving brief.)  Other than as stated in these fact-findings, neither Packaging Systems nor Le Papillon have been shown to have any contacts with the State of Oklahoma, with American Health, or with any other individual or entity in Oklahoma.

## III.   Analytical Framework

Whether a federal court has personal jurisdiction over a nonresident defendant in a diversity action is determined by the law of the forum state.  Rambo, 839 F.2d at 1416.  The test for exercising long-arm jurisdiction in Oklahoma is to determine first whether the exercise of jurisdiction is authorized by statute and, if so, whether such exercise of jurisdiction is consistent with the constitutional requirements of due process.  *Id.* In Oklahoma, this two-part inquiry collapses into a single due process analysis as the Oklahoma long-arm statute provides that "a court of this state may exercise jurisdiction on any basis consistent with the Constitution of this State and the Constitution of the United States."  *Id.*; 12 O.S. § 2004 F.  Thus, for purposes of the present motions, the "law of the forum state" is coextensive with the limits imposed by the Fourteenth Amendment's Due Process Clause.

The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which that individual has established no meaningful contacts, ties, or relations.  Omi Holdings, Inc. v. Royal Insurance Company of Canada, 149 F.3d 1086, 1090 (10th Cir. 1998) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985).  A court may exercise personal jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum state.  Omi, 149 F.3d at 1090, quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1979).

The minimum contacts standard may be met in two ways.  Omi, 149 F.3d at 1090.  A court may, consistent with due process, assert specific jurisdiction over a nonresident defendant if the defendant has purposefully directed his activities at residents of the forum and if the litigation results from alleged injuries which arise out of or relate to those activities.  *Id*. at 1090-91, quoting Burger King, 471 U.S. at 472.  If there is no specific jurisdiction, then a court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state.  *Id*. at 1091, quoting Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408, 415 (1984).  Here, neither plaintiff American Health nor cross-claimant Sonic contend that Oklahoma has any basis for asserting general personal jurisdiction over either of the moving defendants.  Thus, the only issue is whether it is constitutional for Oklahoma to assert specific personal jurisdiction over the moving defendants.

The specific jurisdiction inquiry is two-fold.  Omi, 149 F.3d at 1091.  *Id*.  First, the court must determine whether the nonresident defendant has such minimum contacts with the forum state that the defendant should reasonably anticipate being haled into court there.  *Id*.  Within this inquiry the court must determine two sub-issues:  whether the defendant purposefully directed its activities at residents of the forum state, and whether the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state.  *Id*., quoting Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 109 (1987).

If the defendant's actions meet the above sub-criteria so that they create sufficient minimum contacts, then the court goes on to consider the second part of the inquiry.  That inquiry is whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice.  Omi, 149

F.3d 1086, 1091, quoting Asahi, 480 U.S. at 113.   This inquiry requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances of the case.  *Id.*  The court considers various factors to make this determination:  1) the burden on the defendant of litigating in the forum state, 2) the forum state's interest in resolving the   dispute, 3) the plaintiff's interest in receiving convenient and effective relief, 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and 5) the shared interest of several states in furthering fundamental substantive social policies.  *Id*. at 1095.

Although distinct, these two components of the due process inquiry are related as both originate in the idea that a court cannot subject a person to its authority where the maintenance of the suit would offend traditional notions of fair play and substantial justice.  *Id*. at 1091.  An interplay exists between the two components, such that depending upon the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry.  *Id*. at 1091-92.  The First Circuit has aptly described this interplay as follows:  "We think...that the reasonableness prong of the due process inquiry evokes a sliding scale:  the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction.  The reverse is equally true:  an especially strong showing of reasonableness may serve to fortify a borderline showing of minimum contacts."  *Id*. at 1092, quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994).

## IV.  Packaging Systems' Motions

As stated, the first step in the analysis is to determine whether Packaging Systems had such minimum contacts with Oklahoma that Packaging Systems should

reasonably anticipate being haled into court there.  To answer this question, the court must address two sub-issues.  The first sub-issue is whether the evidence demonstrates that Packaging Systems purposely directed its activities at the forum state, that is, whether Packaging Systems availed itself of the privilege of conducting business in Oklahoma.  Purposeful availment requires actions by a defendant which create a substantial connection with the forum state.  <u>Omi</u>, 149 F.3d at 1092, citing <u>Asahi</u>, 480 U.S. at 109.  Courts have been unwilling to allow states to assert personal jurisdiction over nonresident defendants where the defendant's presence in the forum arose from the unilateral acts of someone other than the defendant.  <u>Omi,</u> 149 F.3d at 1091, citing <u>World-Wide Volkswagen</u>, 444 U.S. at 295.  The court must examine the quantity and quality of Packaging Systems' contacts with Oklahoma to determine whether assertion of personal jurisdiction over that defendant comports with due process.  <u>Omi</u>, 149 F.3d at 1092.

Packaging Systems never dealt directly with American Health or with any customers or other individuals or entities in Oklahoma.  Nor did Packaging Systems solicit the Oklahoma market for its goods and services, a fact which distinguishes this case from <u>Pro Axess, Inc. v. Orlux Distribution, Inc.</u>,  2005 WL 2982276 (10th Cir. 2005), decided just last week.  However, as the fact-findings set out in this Order establish, Packaging Systems received purchase orders from Sonic in 2001 and 2002.  Those purchase orders showed Packaging Systems as the vendor of the product in question and indicated that the product, enhanced with Packaging Systems' goods and services, was for shipment specifically to Oklahoma.  According to the purchase orders and other documents, Packaging Systems handled a large quantity of the product, shipped it to Oklahoma per the purchase orders on various occasions, and benefitted commercially from the transactions.  At some point during the performance of its obligations, Packaging Systems obviously knew that its goods and services were

headed to Oklahoma.  But even more importantly, the president of Packaging Systems expressly "acknowledged" the August 7, 2002 purchase order for 1,800,000 Femoré tubes to be shipped to Oklahoma.  He "confirm[ed]" the "quantity, price and delivery date" for that order when he signed the August 7, 2002 purchase order and had that purchase order, carrying his signature, faxed back to Sonic within the required 24 hour period, all as requested by the language which appeared on the purchase order over his signature.  Thus, jurisdiction over Packaging Systems does not depend on the unilateral acts of a third party such as Sonic; it is Packaging Systems' own, repeated conduct which creates its connection with the forum State of Oklahoma.

Packaging Systems' principal argument is that until it received a purchase order from Sonic it did not know where any particular order or shipment was going because Packaging Systems' agreement with Sonic was simply to ship the product to whatever location Sonic directed.  As stated in Packaging Systems' briefing: "To simplify, once it received the Purchase Orders from Sonic, Packaging Systems was contractually bound by the terms of the contract/Purchase Order, and it was not until after Packaging Systems was already contractually bound that it learned where the product was going to be shipped -- i.e. when it received the Purchase Orders."  (Packaging Systems' amended reply brief, p. 2.)   Packaging Systems contends that Mr. Adolfsson's signature was not an acceptance of a contract, but rather, simply an acknowledgment or confirmation of receipt of the purchase order and that, pursuant to the parties' course of dealing, the contracts between Sonic and Packaging Systems "were formed by Sonic's submission of the Purchase Order."  (Packaging Systems' amended reply brief, p. 3.)  Based on these arguments, Packaging Systems contends that it never purposefully availed itself of the Oklahoma market for its goods and services because at the time it became bound to ship the product to whatever location

would ultimately be specified in the purchase orders, it did not know the shipping destination.

There are at least a couple of problems with Packaging Systems' position. For one, its argument is necessarily premised on some prior agreement between Packaging Systems and Sonic which pre-dates Packaging Systems' receipt of any particular purchase order. Pursuant to this prior agreement, Packaging Systems supposedly became obligated on a standing basis to ship the product to any designated location upon receipt of each purchase order from Sonic. Packaging Systems, however, has identified no evidence describing the nature or terms or date of any such prior agreement. There is also no evidence as to what Packaging Systems knew about the ultimate destination of the product when this prior agreement supposedly became effective. If Packaging Systems does not intend to rely upon a prior written or oral agreement per se but, rather, upon the parties' course of dealing as creating this contractual obligation to ship anywhere upon receipt of the purchase order, it must identify at what point the parties' course of dealing included this understanding and what Packaging Systems knew about the destination of the product at the time this course of dealing arose.

A second problem with Packaging Systems' position is that the language over Packaging Systems' president's signature on the August 7, 2002 purchase order for 1,800,000 tubes of Femoré suggests that even if such a prior agreement existed, it was expressly contingent upon Packaging Systems' acknowledgment of each purchase order and Packaging Systems' confirmation of the terms and conditions stated in each purchase order. When Packaging Systems fulfilled the contingency by acknowledging and faxing back the purchase order to Sonic, it clearly knew that one of the terms and conditions of its obligations was to ship the product to Oklahoma.

Thus, although Packaging Systems argues that "Any 'availment' of the benefits of doing business in Oklahoma was unintentional and happenstance, not 'purposeful,'" ( moving brief, p.12), the court disagrees.  The court concludes that American Health has shown that Packaging Systems purposefully availed itself of the privilege of conducting business within Oklahoma by directing activities at residents of Oklahoma.  Measured by their quality and quantity, the court finds and concludes that Packaging Systems' actions create a substantial connection with the State of Oklahoma.

The second sub-issue in the minimum contacts analysis is whether plaintiff's claim arises out of, or results from, actions by the nonresident defendant which create a substantial connection with the forum state.  It is clear that American Health's claims arise out of the actions by Packaging Systems which connect Packaging Systems with the State of Oklahoma and no party argues otherwise.  The court finds and concludes that this second requirement is met.

Because both of the sub-issues of the first step of the analysis indicate that minimum contacts exist, the court turns to the second step in the analysis.  That step requires determining whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice.  Omi, 149 F.3d at 1091.  As stated, this inquiry requires determination of whether the court's exercise of personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances.  Id.  The court evaluates the five factors which are discussed in Omi as relevant to the issue of reasonableness.

1.  Burden on defendant of litigating in the forum.  This factor, while not dispositive, is of primary concern in determining the reasonableness of personal jurisdiction.  Id.  Packaging Systems is a limited liability company, not an individual with restricted ability or means to travel.  Unlike the Canadian corporations which

were defendants in <u>Omi</u>, or the French defendant in <u>Pro Axess</u>, Packaging Systems not only does business in the United States, it has its principal place of business in the United States.  *Cf.*, <u>Omi</u> at 1096 (burden on defendant of litigating in Oklahoma unreasonable when one factor weighing strongly in court's consideration was that defendant was a Canadian corporation); <u>Pro Axess</u> at *6 (defendant company headquartered in France but had demonstrated ability to journey to the U.S. for business dealings and owned a subsidiary in California, so that it was not gravely difficult and inconvenient for French company to litigate in Utah).  With respect to this factor, Packaging Systems offers only the conclusory statement that "Here, the burden on a New Jersey corporation to defend itself in Oklahoma, having never done business in Oklahoma and having no ties to or contact with Oklahoma, is substantial and clear."  (Packaging Systems' moving brief, p. 17.)

The types of considerations which <u>Omi</u> mentioned in its discussion of this first factor were whether the forum was "distant," or whether there were "onerous" burdens created by having to appear in a distant forum.  Examples of such burdens were parties being required to travel outside their home country and being required to litigate in a forum which was not familiar with the Canadian law which would govern the <u>Omi</u> dispute.  Here, Packaging Systems is not located in a foreign country. It supports its contention that appearing in Oklahoma would create burdens which are "substantial and clear" with no affidavits, evidence, or details as to why litigating in Oklahoma would constitute such a burden.  For example, there is no evidence indicating what added travel costs would be incurred by litigating here.  Even if the court is willing to assume that it would be more difficult for Packaging Systems to litigate here than in its home state, there is no evidence that the burden of litigating in Oklahoma would be onerous.  Although it was a factor in <u>Omi</u>, the  only discussion in the parties' briefs regarding which state's law will ultimately apply in this action

is contained in American Health's response to Le Papillon's alternative motion for a change of  venue, arguments which are moot given this Order's subsequent determination of Le Papillon's motion to dismiss, and arguments as to which all parties have not stated their positions.  Regardless, if Oklahoma law applies as American Health contends, this court is familiar with Oklahoma law; if the law of another state applies, there is no reason to think this court will be unfamiliar with another state's law in the same way that the <u>Omi</u> court was unfamiliar with Canadian law.  Accordingly, no matter which state's law applies, there is nothing to suggest that this court's application of that law would constitute an onerous burden upon the defendant.

The court finds that Packaging Systems has not established that it would be burdensome for it to litigate this action in Oklahoma.  This factor, which is of primary concern, favors allowing this court to assert its jurisdiction over Packaging Systems.

2.  Forum state's interest in adjudicating the dispute.  Oklahoma has an interest in resolving this dispute because the allegedly injured party, American Health, is an Oklahoma limited liability company.  (The court notes, however, that other states, such as New Jersey, also have an interest.)

3.  Plaintiff's interest in convenient and effective relief.  Obviously, American Health is located here, the product was shipped here, and American Health elected to file this action here. Although the court is therefore willing to presume that it would be more convenient for American Health to try this action here than in New Jersey, there is no evidence before the court which details in what ways this might be true.[8]

---

[8]American Health's briefing in response to Le Papillon's alternative motion to transfer makes certain contentions regarding the convenience of trying this action here.  Those contentions are not supported with any affidavits or other evidence.  Moreover, the court does not address these contentions regarding convenience because, as previously stated, Le Papillon's motion to transfer is moot and because not all parties have stated their positions with respect to any motion to transfer for reasons of venue.

There is also no evidence and no developed argument regarding the effectiveness of any relief which may be provided in this forum, where all defendants may not be subject to suit.

4.   Interstate judicial system's interest in obtaining efficient resolution.  The interstate judicial system has an interest in obtaining the most efficient resolution of controversies.  To the extent that it is possible to litigate most or all claims in one state, that result serves the judicial systems' interest (and presumably also the parties' interest, at least in this respect) in obtaining efficient resolution of disputes.  However, if one or more of the defendants do not have minimum contacts with a particular state so that all claims cannot be litigated in that state, that is not a consideration which can overcome a lack of minimum contacts and thereby require a defendant who is not subject to that state's jurisdiction to litigate there.  *See*, Omni, 149 F.3d at 1091 ("Second, *if* the defendant's actions create sufficient minimum contacts, we must *then* consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" (Emphasis added.)

5.   States' interest in furthering fundamental substantive social policies.  Finally, the shared interest of the several states in furthering fundamental substantive social policies is served by allowing American Health to litigate its claims to the extent possible in its home forum, the forum of plaintiff's choice, and a forum whose state laws provide remedies for the types of claims alleged in this action such as breach of contract, breach of warranty and negligence.  Other states may have an equal social policy interest in entertaining this litigation; however, given the various states represented by the various defendants.  The types of issues presented in this action do not involve controversial social issues in which one state might arguably have a higher stake than another.

Having considered each of the necessary factors, the court finds and concludes that Oklahoma's exercise of jurisdiction over Packaging Systems is reasonable in light

of the circumstances.  As reaffirmed in <u>Asahi Metal Industry Co., Ltd.</u>, 480 U.S. 102, 110 (1987), quoting from <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980), "if the sale of a product of a manufacturer or distributor...is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owners or to others." Here, there is much more than an isolated occurrence involving Packaging Systems and the Oklahoma market.  By its own efforts and conduct, Packaging Systems indirectly served the Oklahoma market for its goods and services on repeated occasions and received the commercial benefits which resulted from that effort and conduct.  Not only was it foreseeable that Packaging Systems' goods and services would enter Oklahoma, at some point prior to the time Mr. Adolfsson signed the purchase order dated August 7, 2002, Packaging Systems knew for a fact that its goods and services would enter Oklahoma.  It is fair for Packaging Systems to be haled into court in Oklahoma based on allegations that Packaging Systems' conduct damaged the Oklahoma company to which it shipped a product which had been enhanced by Packaging Systems' goods and services.  Accordingly, it does not offend traditional notions of fair play and substantial justice for Oklahoma to assert its personal jurisdiction over Packaging Systems in this action.  The cross-claims alleged by Sonic do not raise any considerations different from those  already addressed.  The court determines that personal jurisdiction over Packaging Systems is constitutional under the Due Process Clause and that Packaging System's motions to dismiss all claims and cross-claims alleged against it should, therefore, be denied.

## V.  Le Papillon's Motions

Defendant Le Papillon's situation is different.  There is no evidence indicating any effort or conduct by Le Papillon, either directly or indirectly, to serve the

Oklahoma market with its goods and services.  Although American Health again relies on the purchase orders which passed between Sonic and Packaging Systems, the purchase orders do not refer to Le Papillon.  As stated in part II of this Order, there is no evidence that Le Papillon ever saw the purchase orders, signed the purchase orders, or acted based on the purchase orders.

Faced with no evidence that Le Papillon either knew that its goods and services were directed at Oklahoma, or that it conducted itself so as to direct its goods and services toward the Oklahoma market, American Health contends that Le Papillon should have known that American Health was located in Oklahoma and that Le Papillon's goods and services were therefore directed at that market.  Given these facts and arguments, the jurisdictional issues raised by Le Papillon's motion are somewhat similar to the issues raised when a defendant puts its goods and services into the general stream of commerce without any specific knowledge that those goods and services are going to a particular forum state but where the stream of commerce "eventually [sweeps] defendant's product into the forum state." Asahi, 480 U.S. at 110.  Accordingly, Asahi's Part II-A discussion of stream of commerce issues is helpful.  Asahi, 480 U.S. at 112-14 (plurality opinion, Part II-A).

Authored by Justice O'Connor, this portion of the Asahi opinion rejects the notion that mere forseeability that a product will arrive in a given forum suffices for the exercise of jurisdiction.  Asahi describes an Eighth Circuit decision in a case which involved a Japanese car manufacturer, Humble v. Toyota Motor Co., 727 F.2d 709 (8th Cir. 1984).  Asahi notes that in Humble, the Court of Appeals adopted the reasoning of the district court that although the court "does not doubt that [the defendant] could have foreseen that its product would find its way into the United States," it would be "manifestly unjust" to require the defendant to defend itself in the United States.  Asahi, 480 U.S. at 1032.  Asahi states that this position is "consonant with the requirements of due process." Id.  Quoting Burger King Corp. v. Rudzewiz,

471 U.S. 462.   Justice O'Connor then goes on to state that "the 'substantial connection' between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*."  Asahi, 480 U.S. at 112, quoting Burger King, 471 U.S. at 476 (emphasis in Asahi).  Thus, Part II-A of Asahi rejects mere forseeability as sufficient for minimum contacts.   As stated in that decision, "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State."  Asahi, 480 U.S. at 112.  Quoting Burger King, Justice O'Connor writes that action which may indicate an intent or purpose to serve the forum state includes designing the product for the market of the forum state, advertising in the forum state, establishing channels for advice to customers in the forum state, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum state.  *Id*.  In the instant action, there is no evidence that Le Papillon participated in any of these types of activities or in similar activities.

It has long been  clear that even a single purposeful contact may be sufficient to meet the minimum contacts standard when the underlying proceeding is directly related to that contact.  Application to Enforce Administrative Subpoenas Duces Tecum of the Securities and Exchange Commission v. Knowles, 87 F.3d 413, 419 (10th Cir. 1996), citing McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957).  As this statement of law recognizes, however, to assert specific personal jurisdiction, there must be evidence that the defendant "has purposefully directed his activities" at the forum jurisdiction.  *Id*. at 418, citing Burger King, 471 U.S. at 472, and other authorities.  *See also*, Kuenzle v. HTM Sport-Und Freizeitgerate AG, 102 F.3d 453, 456 (10th Cir. 1997)(Australian manufacturer selling products through independent distributor not subject to Wyoming jurisdiction, quoting Knowles quoting

Burger King); <u>Ten Mile Industrial Park v. Western Plains Service Corporation</u>, 810 F.2d 1518, 1525-26 (10th Cir. 1987) (parties which had executed participation agreements with a South Dakota company had not purposefully availed themselves of the privilege of conducting activities in Wyoming), citing <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958) and <u>Worldwide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286 (1980).

Thus, in order to assert specific personal jurisdiction over a defendant like Le Papillon, there must be evidence showing at least some conduct by Le Papillon which was purposefully directed at the Oklahoma market.  Construing all disputed facts and inferences in American Health's favor, plaintiff has failed to establish any such purposefully directed conduct by Le Papillon.  This means that the first sub-issue of the minimum contacts test -- whether the defendant purposefully directed its activities at residents of the forum state -- is not met.  This also means that it unnecessary to consider the second sub-issue of the minimum contacts test (whether plaintiff's claims arise out of or result from actions by the defendant himself which create a substantial connection with the forum state), or the second-prong of the due process analysis (the reasonableness component of the inquiry).[9]

The cross-claims alleged by Sonic do not raise any considerations different from those already addressed.  The court determines that asserting personal jurisdiction over Le Papillon would be unconstitutional under the Due Process Clause and Le Papillon's motions to dismiss all claims and cross-claims alleged against it should, therefore, be granted.  This ruling moots Le Papillon's alternative request for a change of venue to New Jersey.

---

[9]Although there is a relationship between the two prongs of the analysis, no amount of reasonableness can make up for a complete lack of minimum contacts. *See*, n.2, *supra*.

## VI.   Conclusion

After careful consideration of the parties' submissions, the pleadings, and the legal authorities, the court rules as follows.

Packaging Systems, L.L.C.'s Motions to Dismiss (doc. nos. 41, 79) are **DENIED**.

Le Papillon of New Jersey, Ltd.'s Motions to Dismiss (doc. nos. 40, 78) are **GRANTED**.  Defendant Le Papillon of New Jersey, Ltd. is hereby **DISMISSED** from this action without prejudice.  Fed. R. Civ. P. 12(b)(2).  Le Papillon's alternative motion for a change of venue is **STRICKEN** as moot.

Dated this 14th day of November, 2005.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

04-1303p016(pub).wpd